IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                                      CRIMINAL ACTION NO.   3:15-00009

CHRISTOPHER JERMAINE TAYLOR
        also known as "Phoenix"
        also known as "C-Murda"

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Christopher Jermaine Taylor's pro se "Motion for

Court to Nunc Pro Tunc Reevaluate the Basis of Its Previous Decisions Denying My Request for

Compassionate Release Based on Intervening Legal and Factual Developments and/or Change in

Case Law." ECF No. 284. For the following reasons, the Motion is **DENIED**.

**I. FACTUAL BACKGROUND**

On February 3, 2015, Defendant pled guilty to a single-count information charging him

with conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1)

and 846. *See* ECF Nos. 5, 8, 10. This offense carries a mandatory minimum sentence of five years

and a maximum sentence of forty years of incarceration. 21 U.S.C. § 841(b)(1)(B). At the

sentencing hearing held on September 8, 2015, Defendant objected to several hundred grams of

heroin attributed to him as relevant conduct, as well as the two-point gun enhancement under

United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1). Presentence Report ("PSR") at

32, ECF No 55. After hearing witness testimony and arguments, the Court held that the

Government proved by a preponderance of the evidence that 1 to 3 kilograms of heroin were

attributable to Defendant for the purposes of the U.S.S.G. calculation. Sentencing, ECF No. 44;

Judgment, ECF No. 47. The Court also held that the gun enhancement applied. *Id*. With this relevant conduct and enhancement, the Court determined that Defendant's total offense level was 33. Hr'g Tr. at 158:24-25, ECF No. 57. When factoring in Defendant's criminal history category, the Court determined that the Guidelines range was 151 to 188 months. *Id*. at 159:3-7. The Court then granted Defendant's motion for a variance and sentenced him to a term of imprisonment of 138 months and a period of supervised release of four years. Judgment, ECF No. 47.

Defendant has asked for a reduction in sentence multiple times in a continuing effort to obtain early release or resentencing under the First Step Act. After careful review, the Court has denied his requests several times. Given this litigious history, several of the arguments immediately before the Court have already been addressed. Relevant here is Defendant's December 22, 2021, Motion for Reduction in Sentence which stated the following grounds for his release: that his family circumstances warrant release, specifically that children's grandparents are incapacitated; that the probation officer had informed the court that the grandparents were the only available caregivers; and that a reduction would be consistent with the Section 3553(a) factors. *See e.g.*, Def.'s Mot., ECF No. 282.

The Court denied this Motion, noting that the claims had already been fully addressed in this Court's previous Orders and Defendant had not raised any new facts or law to support the Motion. Order, ECF No. 283. The Court denied his previous motions based on the same grounds, specifically finding that his children's grandparents could act as caregivers, that Defendant did not have custody of his children, and that the Section 3553(a) factors did not warrant release. See Orders, ECF Nos. 262; 271.

Defendant now asserts that his release is warranted because his family difficulties continue, specifically citing new medical conditions of his children's caregivers; that he is at

continued risk of COVID-19; and addressing the Section 3553(a) factors. *See e.g.*, Def.'s Mot. The Court ordered the Government to respond, which it did on April 29, 2022. Govt.'s Resp., ECF No. 288. The Court also ordered the Probation Office to contact Defendant's children's caregivers to confirm their medical plans and ascertain their ability to care for his children. Order, ECF No. 285. The Probation Office filed a memorandum detailing its investigation. Probation Office Memo, ECF No. 290. Defendant replied to the Government's response on May 9, 2022. Def.'s Emergency Resp., ECF No. 291. Thus, the Motion is ripe for consideration.

## II. STANDARD OF REVIEW

"Generally, a court may not modify a term of imprisonment once it has been imposed." *United States v. Wirising*, 943 F.3d 175, 179 (4th Cir. 2019), as amended (Nov. 21, 2019) (internal quotations omitted) (citing 18 U.S.C. § 3582(c)). However, there are many exceptions to this rule. In 1984, Congress created a mechanism for federal inmates to seek what is now known as "compassionate release" under 18 U.S.C. § 3582(c)(1)(A). In 2018, through the passage of the First Step Act, Congress partially amended the compassionate release-statute. *See* First Step Act, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239-40 (2018).

As part of the Act, Congress amended Section 3582 and enabled courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act § 603(b). However, before defendants may request such a reduction, defendants must ask the Bureau of Prisons ("BOP") to do so on their behalf. *See* 18 U.S.C. § 3582(c)(1)(A). If the BOP denies the defendant's request or does not respond within 30 days, the defendant may file a motion before the court. *Id*. If an inmate satisfies this administrative exhaustion requirement, courts may reduce the inmate's sentence if it (1) finds that extraordinary and compelling reasons warrant a sentence reduction, and (2) considers the relevant 18 U.S.C. §

3553(a) sentencing factors and determines the requested reduction is consistent with the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

When analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion…." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). However, reductions based on extraordinary and compelling reasons must be "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In the case of compassionate release motions under the statute, this consistency mandate "simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement[ ].'" *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). (quoting 18 U.S.C. § 3582(c)(1)(A).

As a result, "district courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis added)). But the second consideration does not fall away completely because it is appropriate for district courts to consider § 1B1.13 of the Federal Sentencing Guidelines in defining what should be considered an extraordinary and compelling circumstances warranting a sentence reduction. *United States v. Jenkins*, 22 F.4th 162, 169-70 (4th Cir. 2021) ("Thus, the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a sentence reduction.").

Regarding the family circumstances that qualify as "extraordinary and compelling reasons," the Guidelines contain an application note specifying the types of situations that would warrant release. U.S.S.G. § 1B1.13, cmt. n.1(C). It provides that the standard is met if there has been "[] death or incapacitation of the caregiver of the defendant's minor child or minor children," or "[]incapacitation of the defendant's spouse or registered partner when the defendant would be

the only available caregiver for the spouse or registered partner." *Id*.

Additionally, during the COVID-19 pandemic, courts have recognized that compassionate release is appropriate where an inmate has shown both a particularized susceptibility to the virus and a particularized risk that he will contract the virus at his facility. *See, e.g.*, *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020); *United States v. Eberbaugh*, No. 2:18-00222-02, 2020 WL 4804951, at *3 (S.D.W. Va. Aug. 18, 2020) (considering "the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility" to determine if compassionate release is appropriate).

## III. DISCUSSION

A. Exhaustion

As this Court has noted in previous orders, Defendant has failed to demonstrate that he has exhausted his administrative remedies. *See* Mem. Op. and Order, ECF No. 256. But, given that the Court has previously found that he has exhausted his administrative and there has been no objection by the Government, the Court will consider his Motion on the merits. See *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021) ("Because the [administrative exhaustion] requirement is not jurisdictional, it may be waived or forfeited.").

B. Extraordinary and Compelling Circumstances

*1. Family Circumstances*

Defendant first alleges that the caregivers of his children are facing upcoming surgeries which will leave them incapacitated. Specifically, defendant states he has four children by Jaleesa Reynolds, two biological sons (ages 7 and 8) and two stepchildren (ages 14 and 15), and a biological daughter (age 17) with a former girlfriend. *See* Def.'s Mot. at 4-5. Because Ms.

Reynolds unfortunately passed away, the four children are under the care of their grandparents, George and LaWanda Williams. *Id*. His older daughter is in the care of her mother Ashley Butler. *Id*. Defendant alleges that Ms. William is scheduled to undergo a double-knee replacement surgery and will remain hospitalized for a 12-week period post-surgery. *See id*. at 4-5. Further, the caretaker for his 17-year-old biological daughter is scheduled to undergo cervical surgery and will be incapacitated for 6 weeks post-surgery. *Id*. As discussed above, the Guidelines comment addresses the standard for extraordinary and compelling family circumstances, noting that it may be appropriate in cases involving the "death or incapacitation of the caregiver of the defendant's minor…children." U.S.S.G. § 1B1.13 cmt. n.1(c).

Probation has contacted Mrs. Williams, who advised that she is having a single knee replacement on June 25, 2022, on her right knee. *See* Probation Memo at 1-2, ECF No. 290. She will not have a left knee replacement until she is recovered from her first surgery. *Id*. She advised that the surgery is not an outpatient procedure but was uncertain of how long she would need to remain in the hospital. *Id*. There was no indication that she would be hospitalized for twelve weeks. *Id*. She indicated that she would be unable to drive for four to six weeks after the surgery, and that she has transportation concerns. *Id*. Further, Mrs. Williams indicated that Ms. Butler would be available to help her with the children during her recovery, though Ms. Butler is having her own medical procedure on May 13, 2022. *Id*. She is uncertain that she will recover in time to help Mrs. Williams with the children. *Id*. She indicated that she would be hospitalized for approximately one week and unable to return to normal activities for four to six weeks. *Id*.

Of course, the Court does not doubt the severity of Defendant's family's medical conditions or concerns. However, the Court cannot say that a short period of hospitalization and an outpatient recovery period rises to the level of incapacitation as contemplated by compassionate

release purposes. *Cf. United States v. Cunningham*, No. CR 3:18-00211, 2021 WL 518343 (S.D. W. Va. Feb. 10, 2021) (granting compassionate release where defendant's fiancé, who cared for his daughter was murdered; the current caregiver was unable to care for his daughter until his release; and no other caregiver could be identified); *see also United States v. Taylor*, No. 3:15-00009, 2021 WL 1567490 at *1 (S.D.W. Va. Apr. 21, 2021) (discussing the differences in this defendant's case and Cunningham's).

Moreover, there is little indication that Defendant's release would alleviate the pressure facing his family at this time. He could not resolve Mrs. Williams' transportation concerns because he has a suspended license in Michigan. *See* Probation Memo at 1. Additionally, defendant does not appear to be the legal guardian of his sons (and has never had custody of the children referred to as his stepson and stepdaughter.) *See* Mem. Op. and Order at 2, ECF No. 232; Order at 2, ECF No. 262; PSR at 22. Though he claims he could readily obtain custody upon release, he does not supply any documentation concerning his loss of custody nor any other support for this claim. Thus, it is doubtful that he could assume custody of any of the children to act as their caregiver.

Additionally, Defendant has not shown that there are no alternative caregivers available to care for any of the children. *See United States v. Lottier*, No. 7:16-CR-00030, 2020 WL 7233363 at *2 (W.D. Va. Dec. 7, 2020) (collecting cases). According to his PSR, he has numerous relatives – including a father, brother, sister, half-brother, and half-sister. PSR at 21-22. Defendant has not shown that these relatives are unable to assist in childcare during the recovery period. Defendant replies that they are not involved in his children's lives and that Mrs. Williams only receives assistance from Ms. Butler. Def.'s Emergency Resp., at 5-6, ECF No. 291. This assertion is simply insufficient to meet the evidentiary burden required of Defendant and is only one of the factors in this Court's decision.

*2. COVID-19*

Defendant additionally cites COVID-19 concerns as the basis for extraordinary and compelling reasons warranting compassionate release. However, he fails to show both the requisite susceptibility and risk of contraction necessary in these circumstances. Defendant claims that his medical conditions, such as severe sleep apnea, hypertension, and obesity, place him at increased risk of complications from COVID-19. *See* Def.'s Mot. at 9. Although BOP medical records attached to the Government's response generally support Defendant's claim that he suffers from certain mild medical conditions that may ordinarily place him at increased risk based on CDC guidance, he does not show that the conditions are being insufficiently managed by the BOP. *See e.g.*, Medical Records, ECF No. 288-2. Further, he has received two doses and a booster dose of the vaccine and so is fully vaccinated against COVID-19 per CDC guidance. *See* Medical Records at 24; *Stay Up to Date with Vaccines*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/ stay-up-to-date.html (last visited May 11, 2022). The records do not otherwise indicate that his medical conditions have recently been seriously exacerbated or are otherwise untreatable.

Additionally, USP Lewisburg, where Defendant is currently housed, reports no cases of active COVID-19 infections among its inmates and staff. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited May 11, 2022). The facility has also vaccinated over 1,100 inmates. *See id.* Thus, Defendant fails to meet either prong required for compassionate release because of COVID-19.

C. Section 3553(a) Factors

Lastly, the Section 3553(a) factors counsel against relief. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Defendant's conviction was the result of him organizing and leading a large-scale heroin conspiracy, involving at least eight other individuals, to transport heroin from Detroit to the

Huntington area. *See* PSR at 2-3,7. He used other co-conspirators as "line men" to distribute the heroin here and recruited individuals in this district to facilitate the sale of the drugs. *Id*. at 7, 14-16. Defendant was ultimately held responsible for 2, 255.15 grams of heroin. *Id*. at 17. He was subject to numerous enhancements, including those for possessing firearms, maintaining a premises, and organizing and leading the conspiracy. *Id*. at 18. He also has a short but serious criminal history including a conviction for assault with a dangerous weapon. *Id*. at 19.

This Court recognized the Defendant's sincere remorse and family obligations in granting a downward variance from the properly calculated guideline range. *See* Statement of Reasons, ECF No. 44. To otherwise reduce defendant's sentence, after this variance, and when he has served only approximately 80 percent of the statutory term of imprisonment, would demean the seriousness of his offense. *See* Sentence Monitoring Computation Data, ECF No. 288-1.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 284) is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the petitioner, the Unites States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER:        May 12, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE